# Exhibit 2

FinThrive Colleague Noncompetition Agreement

This FINTHRIVE COLLEAGUE NONCOMPETITION AGREEMENT (the "Agreement") is between the Company (defined below) and the individual who signs this Agreement ("Me" or "I"). This Agreement is effective as of the date upon which it is signed by Me, whether my signature is hand written or electronic (the "Effective Date").

Acknowledgements and Understandings

BECAUSE, FinThrive, Inc. (the "Company") is headquartered in Georgia; and

BECAUSE, I desire to become employed by the Company; and

BECAUSE, I have certain expertise and experience which the Company desires to engage, and the Company is therefore willing to provide Me (during employment) with access to the Company's confidential and proprietary information, which may include trade secrets or other competitively sensitive information upon and subject to the terms and conditions contained in this Agreement; and

BECAUSE, I cannot perform my job duties with the Company without access to the Company's confidential and proprietary information, and the Company does not consent to access to such information without assurances that I will not inappropriately compete with the Company; and

BECAUSE, I am willing to provide such assurances, upon and subject to the terms and conditions contained in this Agreement; and

BECAUSE, the Company has a legitimate interest in protecting its business interests, including, but not limited to:
1. the Company's trade secrets;
2. the Company's other valuable confidential, business, or other professional information that may or may not also qualify as trade secrets;
3. the Company's relationships with its existing customers and with certain prospective customers;
4. the Company's relationships with its colleagues, including its investment in recruiting, training, developing, and retaining those colleagues; and
5. Any and all extraordinary or specialized training that the Company provides to Me; and

BECAUSE, I will receive the following consideration in exchange for the promises I make in this Agreement, and I have no expectation of any compensation, bonus, royalty, or other payment of any kind in connection with this Agreement except for one or more of the following, as applicable:

1. Employment at will with the Company; and
2. Receipt of and access to the Company's confidential and proprietary information during employment, which may include trade secrets or other competitively sensitive information; and
3. Other good and valuable consideration, such as a promotion or similar advancement within the Company, a wage or salary increase, or participation in the Company's corporate bonus plan, or eligibility to be considered during employment for one or more of such occurrences; and

BECAUSE, I will obtain knowledge and skill relevant to the Company's industry, methods of doing business, product development, sales and marketing strategies, and other strategic information relating to the Company's business by virtue of the my employment; and

BECAUSE, the services to be rendered by Me to the Company may be of a special, unique, or extraordinary character, and my position with the Company may place me in a position of confidence and trust with the customers of the Company; and

BECAUSE, the restrictive covenants and other terms and conditions of this Agreement are reasonable, and reasonably necessary to protect the legitimate business interest of the Company; and

BECAUSE, I will not be subject to undue hardship by reason of my full compliance with the terms and conditions of this Agreement or the Company's enforcement thereof;

NOW, THEREFORE, in return for the consideration described above, the Company and I agree to the terms, conditions, and acknowledgements as follows:

1. Confidential Information

(a) <u>Further Acknowledgements Relating to Confidential Information</u>. I understand and acknowledge that the Company has invested, and continues to invest, substantial time, money, effort, and specialized knowledge into developing its resources, creating a customer base, generating customer lists and prospective-customer lists, compiling other customer information, training its colleagues, and improving its offerings to the applicable markets. I further understand and acknowledge that as a result of these investments and my employment with the Company, I will or have already create/created, learn/learned about, or have/had access to Confidential Information (described below) during the course of my employment with the Company.  I further understand and acknowledge that the Confidential Information provides the Company with a competitive advantage, and that the Company would suffer irreparable harm if it were disclosed to the Company's competitors.

"<u>Confidential Information</u>" has the meaning given to that term in the Colleague Confidentiality and Intellectual Property Agreement or such other confidentiality

agreement(s) with the Company executed or to be executed by Me. Examples of Confidential Information include but are not limited to:

- Any and all information compiled by any Company colleague, including by Me, which is stored in any password protected location, including but not limited to Salesforce, any Company intranet sites such as SharePoint Online or MAC Collaboration, and any e-communications platforms such as Outlook;

- Any and all information pertaining to the Company's product development, such as plans to develop new products or enhance existing products, any request for a product enhancement communicated by Me or by any customer to the Company, and any actual or proposed product-development strategies regardless of whether or not adopted, implemented, or reduced to written form;

- Any and all software, source code, algorithm, data table, or platform developed or used for or in any Company product, regardless of whether or not the Company markets or sells the product;

- Any and all non-public data compilation or database content developed, refined, maintained, purchased, or used by the Company;

- Company strategies, plans, or lack thereof relating to product features, functions, flaws, and weaknesses, regardless of whether or not the Company markets or sells the product, and regardless of whether or not adopted, implemented, or reduced to written form;

- Any and all non-public customer information created, compiled, or otherwise obtained by any colleague of the Company, including by Me while employed with the Company, or obtained from the Customer or any other third party;

- Any and all customer data compiled by any colleague of the Company, including by Me while employed with the Company, regardless of whether the individual components of the compilation may be public information;

- The contract expiration and renewal dates of any contract or other agreement between the customer and the Company;

- Any and all pricing, discounts, bonus payments, and performance guarantees pertaining to any customer contract, agreement, or proposal;

- Any and all other terms and conditions pertaining to any customer contract, agreement, or proposal;

- Any and all terms and conditions pertaining to any contract, agreement, or proposal with any other third party, including but not limited to independent contractors, third-party service providers, co-marketing partners, or other strategic sales or service partners;

- Any and all non-public sales, marketing, or advertising strategies or information;

- Any work product or work-in-progress created, worked on, or developed by Me while employed with the Company, regardless of whether or not the Company markets, sells, or uses it; and

- Trade secrets and other information that does not qualify as a trade secret but which the Company designates as confidential, competitively sensitive, or proprietary.

I understand and acknowledge the above list describes examples of Confidential Information, and it is not exhaustive; Confidential Information also includes any other information that meets the definition of "Confidential Information" set forth in the Colleague Confidentiality and Intellectual Property Agreement or any other confidentiality agreement I may have with the Company.

2. Restrictive Covenants

(a) <u>Further Acknowledgments Relating to Restrictive Covenants</u>. I understand and acknowledge that: (i) the nature of my position gives Me access to and knowledge of Confidential Information and places Me in a position of trust and confidence with the Company; (ii) the Company has invested and continues to invest significant time, expense, specialized knowledge, and effort in developing goodwill with its customers, prospective customers, and others, and my employment with the Company allows me to benefit from that goodwill; (iii) the restrictive covenants set forth below are necessary to protect the Company's legitimate business interests in its Confidential Information and goodwill, and (iv) the Company's ability to reserve the Confidential Information and goodwill for the Company's exclusive access and use is of great competitive importance and commercial value to the Company, and the Company would be irreparably harmed if I were to violate the restrictive covenants below.

(b) <u>Noncompetition</u>.

(i) I hereby promise and commit that I will not engage in any Competitive Activity (defined below) during the Non-Compete Period (defined below) within the Applicable Geographical Area (defined below). This restriction applies regardless of whether my actions or involvement in a Competitive Activity would be direct or indirect; in my individual capacity or on behalf of any other person, company, enterprise, or entity; as a sole proprietor, partner, stockholder, director, officer, principal, agent, or executive; or in any other capacity or relationship. But, as a limited exception, nothing herein shall prohibit Me from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that I am not a controlling person of, or a member of a group that controls, the applicable corporation.

(ii) "<u>Competitive Activity</u>" designing, developing, manufacturing, marketing, promoting, selling, re-selling, supplying, distributing, installing, supporting, maintaining, licensing or sublicensing any Competing Product (defined below).

"Competitive Activity" includes providing, performing, offering, or otherwise facilitating training, consulting, or other similar service relating to any Competing Product. "Competitive Activity" also includes any activity that would require or is reasonably likely to result in the disclosure of Confidential Information. "Competing Product" means any product or service that is functionally similar to the following: any product or service which, at any time during my employment with the Company, was designed, developed, manufactured, supported, maintained, sold, offered for sale, marketed, promoted, tested, programmed, written, or created by me, by any person who directly or indirectly reports/reported to me, or by any other colleague or contractor of the Company with whom I collaborate/collaborated in respect of that product or service.

(iii) "Non-Compete Period" means during my employment with the Company plus the first twelve (12) months immediately following my separation from Company employment for any reason; provided that if my employment is terminated by the Company without Cause, "Non-Compete Period" means during my employment and ending on my Company employment termination date.

(iv) "Applicable Geographical Area" means the United States.

(v) "Cause" means the occurrence of any one or more of the following: (A) my breach of the terms of this Agreement, my Colleague Confidentiality Agreement, or the terms of my Company employment (including, without limitation, the material policies of the Company and its affiliates related to sexual harassment or the disclosure or misuse of confidential information, or those set forth in the manuals or statements of the policies of the Company and its affiliates), (B) my willful failure or refusal to perform my material duties for the Company or its affiliates, (C) insubordination or disregard of the legal directives of the Company or senior management, as applicable, which are not inconsistent with the scope, ethics and nature of my duties and responsibilities, (D) engaging in misconduct that has, or could reasonably be expected to have, a material and adverse impact on the reputation, business, business relationships or financial condition of the Company or its affiliates, (E) the commission of an act of fraud or embezzlement or acts of personal dishonesty involving personal profit against any the Company or its affiliates, or (F) my commission of acts constituting, any conviction of, or plea of guilty or nolo contendere to, a felony or of a crime involving fraud or misrepresentation, or any other crime that results, or could reasonably be expected to result in, material harm to the business or reputation of the Company or its affiliates; provided, however, that Cause shall not be deemed to exist under any of the foregoing clauses (A), (B), or (C) unless I have been given reasonably detailed written notice of the grounds for such Cause and, if curable, I have not effected a cure within twenty (20) days after the date of receipt of such notice.

(c) Non-solicitation of Customers.

(i) Further Acknowledgement. I understand and acknowledge that the Company has expended and continues to expend significant time, effort, specialized knowledge, and expense in developing customer relationships, customer information, and customer goodwill, and that because of my experience with and relationship to the Company, I will have access to and learn about Customer Information (defined below). I further understand and acknowledge that loss or disclosure of Customer Information, the

loss of one or multiple customer relationships, or the loss of customer goodwill would cause significant and irreparable harm to the Company.

    (ii) "<u>Customer Information</u>" includes, but is not limited to any and all of the following information if developed, prepared, compiled, purchased, or otherwise obtained by the Company, including if by Me during my employment with the Company:

- customer contact information, including the names, telephone numbers, physical addresses, and e-mail addresses of individuals employed by or representing the customer;
- customer leadership information, such as job titles, job duties, authority, responsibilities, and place within the customer's chain of command;
- customer contract terms, pricing, discounts, rebates, and other deal structure information, including contract expiration and renewal dates;
- customer purchasing history and payment history;
- any product implementation plans of any customer, including implementation schedules;

- any product preferences of any customer, and any product enhancement requests or demands communicated by any customer to the Company (including to Me during my employment with the Company);

- information pertaining to anticipated changes within the customer enterprise, including but not limited to changes in leadership, plans for development, acquisition, or other expansion, plans to transition to or back from an Accountable Care Organization, as well as any plans for corporate divestiture, reduction in staff, or other contraction;

- any customer disputes with the Company pertaining to any Company product, service, or colleague, and any strategies or plans to resolve or otherwise address such disputes;

- any other Company strategies or plans relating to any customer; and

- any other information identifying facts and circumstances specific to a customer and its use, purchase, preference for, dislike of, dispute over, or plans regarding any Company product or service.

(iii)    I hereby promise not to offer, directly or indirectly, within the Applicable Geographical Area, any Competing Product to any Business Relation (defined below), and not to contact, attempt to contact, or accept an invitation from any Business Relation (including but not limited to by e-mail, telephone, instant message, LinkedIn, other social media) for purposes of offering or encouraging the acceptance of any Competing Product or for purposes of analyzing a Competing Product for or on behalf of the Business Relation. These restrictions apply during the Non-Compete Period..

. "<u>Business Relation</u>" means any current or prospective client, customer, licensee, supplier or other business relation of the Company (including any of the Company's subsidiaries or affiliates), if I provided services to, transacted business with, had any other material contact with, or learned of as a result of
or in connection with my employment with the Company.  "Business Relation" includes any entity that was a client, customer, licensee or other business relation (as described in the previous sentence) within the 12-month period immediately preceding my separation from employment.

(d)    <u>Non-solicitation of Colleagues</u>.

I understand and acknowledge that the Company has expended and continues to expend significant time, effort, and expense in recruiting, training, developing, and retaining its colleagues, and that the loss of colleagues causes significant harm to the Company. I hereby promise not to, directly or indirectly, during the Non-Solicit Period, take any steps to encourage any Company colleague to leave employment with the Company, or to engage in any activity that, if performed by Me, would violate this Agreement. This includes a promise not to recruit, attempt to recruit, or otherwise participate in the recruitment of any Company colleague to join the staff (as an colleague

or contractor) at any other entity, regardless of whether said other entity competes with the Company. "Non- Solicit Period" means during my employment with the Company plus the first twelve (12) months immediately following my separation from Company employment for any reason.

3. Warranty. I represent and warrant that I am not a party to any non-competition restrictive covenant or related contractual limitation that would interfere with or hinder my ability to undertake any of my obligations or to otherwise meet the expectations of employment with the Company.

4. Reaffirmation of At-Will Employment. I understand and acknowledge that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the parties to continue an employment relationship for any certain period of time. Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Company and Me, pursuant to which either the Company or I may terminate the employment relationship at any time, with or without cause, and with or without advance notice.

5. Remedies. In the event of a breach or threatened breach by Me of any of the provisions of this Agreement, the Company will suffer immediate and irreparable injury, for which monetary damages will not be an adequate remedy. The Company shall be entitled to seek immediate injunctive relief, including a temporary restraining order, a temporary injunction, a permanent injunction, or other equitable relief against such breach or threatened breach, without the necessity of showing any actual damages, without the necessity of showing that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, and without prejudice to any legal remedies, monetary damages or other available forms of relief the Company may seek.

6. Successors and Assigns. The Company may freely assign this Agreement at any time, and this Agreement shall inure to the benefit of the Company and its successors and assigns. This Agreement is personal to me, and I am not permitted to assign this Agreement or any part hereof. Any purported assignment by Me shall be null and void.

7. Dispute Resolution. Nothing in this Section 6 constitutes a waiver of either party's right to a trial. Any dispute, claim, counterclaim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement, shall be determined exclusively by the judge, justice, or magistrate to which the applicable civil action is assigned. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (A) NO

REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, AND (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY.

8.  <u>Governing Law: Jurisdiction and Venue</u>. This Agreement, for all purposes, shall be construed in accordance with the laws of Georgia, without regard to conflicts-of-law principles. This Agreement shall be deemed executed in the state of Georgia regardless of the actual place of signature or the actual place of performance. By signing below, I acknowledge that the Company is headquartered in Alpharetta, Georgia (the Company's "Georgia HQ"), I regularly conduct business at or with the Company's Georgia HQ, and I have a meaningful connection with Georgia. Subject to Section 7 of this Agreement, any action or proceeding by either of the parties to enforce this Agreement shall be brought only in a state or federal court located in Fulton County, Georgia. The parties hereby irrevocably submit to the exclusive jurisdiction of said courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in said venue.

9.  <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all the understandings and representations between Me and the Company pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

10. <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless the amendment or modification is agreed to in writing and signed by Me and by a Vice President of Human Resources or another Human Resources executive further up the chain of command. No waiver by either of the parties of any breach by the other party of any condition or provision of this Agreement shall be deemed a waiver of any other provision or condition. The failure of or delay by either of the parties in exercising any right, power, or privilege under this Agreement shall not operate as a waiver thereof, or preclude any exercise of any right, power, or privilege.

11. <u>Severability and Blue-Penciling</u>. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the parties, and any court-ordered modification shall automatically become a part of this Agreement and treated as though originally set forth in this Agreement.

Any court having jurisdiction to interpret, apply, or enforce this Agreement is hereby authorized to modify any provision it deems to be unenforceable in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by

rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making such other modifications as it deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent permitted by law. For example, should any court determine that under the circumstances the Geographical Area is overbroad, the Geographical Area shall be re-defined as any location that is within 50 miles of a Business Relation.

The parties hereby agree that this Agreement, if and as so modified by a court, shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if the invalid, illegal, or unenforceable provision is not modified as provided above, this Agreement shall be construed as if such provision had never been set forth herein.

12. <u>Tolling</u>. Should I violate any of the terms of any restrictive covenant described herein, the Non-Compete Period or the Non-Solicit Period as applicable, shall be extended by the amount of time during which I was in violation of the covenant.

13. <u>Notice</u>. The Company and I authorize each other to provide a copy of this Agreement to any third parties with a need to know or understand the terms of this Agreement, including but not limited to, my subsequent, anticipated, or possible future employers.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

By signing this Agreement, I am acknowledging that I understand this Agreement, and am agreeing to comply with the terms and conditions described throughout this Agreement.

Electronically Signed By
Matthew James Con...                                          5/2/2023

Colleague Signature